512 S.E.2d 795

The STATE, Petitioner,

v.

Iver Norman JOHNSON, Respondent.

No. 24897.

Supreme Court of South Carolina.

Heard Nov. 5, 1998.

Decided Feb. 8, 1999.

80

82

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for petitioner.

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for respondent.

ON WRIT OF CERTIORARI TO
THE COURT OF APPEALS

BURNETT, Justice:

Respondent was convicted of three counts of first degree criminal sexual conduct (CSC) with a minor and five counts of committing a lewd act on a child under the age of fourteen. He was sentenced to imprisonment for thirty years on each CSC and fifteen years on each lewd act, the sentences to run

consecutively. The Court of Appeals reversed respondent's convictions and sentences. *State v. Johnson*, Op. No. 97–UP–653 (S.C.Ct.App. filed Dec. 11, 1997). This Court granted the State's petition for certiorari to review the Court of Appeals' opinion. We affirm in part and reverse in part.

## FACTS

Respondent engaged in inappropriate sexual activity with his six year old daughter, Betty, and her friends, April, Nina, Megan and Maryann, ages 8, 9, 4, and 7 respectively. Respondent babysat the victims while their parents worked. The State alleged respondent took advantage of his position of control and the victims' vulnerability, and sexually abused the girls to satisfy his own sexual desires.

According to the victims, respondent rubbed the genital areas of their bodies, both on top of and underneath their clothing, touched their buttocks, and inserted his finger into the vagina of at least one child. Most of this touching occurred in the living room when the girls were sitting on respondent's lap while watching television. However, according to both Betty and April, respondent also touched them in Betty's bedroom. These acts occurred from April 1994 to August 1994.

The girls saw respondent as he touched the others and discussed the abuse among themselves. Eventually, they told Betty's mother, Brenda Johnson, about respondent's conduct. Mrs. Johnson informed the other parents of the accusations and reported the allegations to the police.

Based on the victims' complaints, respondent was arrested and the police searched his apartment. According to the arresting officer, respondent claimed that "[he] could not have done this" because he was impotent. The officer also stated respondent admitted that his hand could have "slipped" one time when one of the girls was sitting on his lap watching television. Respondent denied abusing the girls.

At the trial, respondent's stepdaughter and stepniece testified, when they were approximately the age of the victims, respondent would touch their genital area when in the living room and eventually respondent began to digitally penetrate their vaginas when in the bedroom.

84

## ISSUES

I.   Did the Court of Appeals err in finding the trial judge should have granted respondent a directed verdict on two of the CSC charges?

II.   Did the Court of Appeals err in finding the trial judge should have allowed respondent to impeach a witness with a prior shoplifting conviction under Rule 609(a)(2), SCRE?

III.   Did the Court of Appeals err in finding the trial judge should have granted a mistrial when a State's witness mentioned an offer of a polygraph examination was made to respondent?

IV.   Did the Court of Appeals err in finding the admission of the search warrant, affidavit, and return was reversible error?

V.   Did the Court of Appeals err in finding the cumulative effect of several errors warranted reversal of respondent's convictions?

## DISCUSSION

### I.

The State contends the Court of Appeals erred in finding the trial judge should have granted respondent a directed verdict on the two CSC charges concerning Betty and Nina because there was no evidence of a sexual battery.

▄▄▄▄▄   In ruling on a directed verdict, the trial judge is concerned with the existence of evidence, not its weight. *State v. Williams*, 303 S.C. 274, 400 S.E.2d 131 (1991). Viewing the evidence in the light most favorable to the State, a jury question is created if there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *Id.*

To support a conviction for CSC, there must be evidence of a sexual battery. S.C.Code Ann. § 16–3–655(1) (1985). A sexual battery is defined as an "intrusion, however slight, ... into the genital or anal openings of another person's body." S.C.Code Ann. § 16–3–651(h) (1985). A conviction for a sexual battery may be sustained on the uncorroborated testimony of

the victim. S.C.Code Ann. § 16–3–657 (1985). In *State v. Mathis*, 287 S.C. 589, 340 S.E.2d 538 (1986), the six year old victim testified the defendant touched her with his penis, but could not remember whether he had put it inside her body. However, she indicated it had hurt. This Court found this was evidence of some intrusion and was sufficient to render the issue one for the jury. *Id.*

Other jurisdictions interpreting similar statutes which require "penetration" find the slightest penetration is sufficient. Full penetration is not necessary. 65 Am.Jur.2d *Rape* § 3 (1972); Charles E. Torcia, 3 *Wharton's Criminal Law* § 278 (1995). Further, it is not essential that penetration be proven by testimony of the victim. Instead, it may be established by circumstantial evidence. 65 Am.Jur.2d *Rape* § 88 (1972); Charles E. Torcia, 3 *Wharton's Criminal Law* § 278 (1995).

In this case, Nina stated respondent fondled her while she sat on his lap in a recliner chair in the living room. Nina testified respondent touched her "lu-lu" which she described as the bottom part of her body "where I don't think nobody likes to be touched." She stated respondent touched her both over and under her clothes. When asked how this made her feel, Nina responded: "It made me feel bad." A physical examination of Nina did not reveal any evidence of a sexual battery.

Betty testified respondent would sleep in her bed with her and that he woke her up and "touched [her] cooter" on the outside of her underwear. She also testified he touched her "on [her] butt." She indicated it hurt when this happened. Betty stated the abuse only occurred in the bedroom and that respondent did not touch her in the living room. A physical examination of Betty showed she had suffered an injury inside her vagina which was consistent with sexual abuse. The physician who performed the physical examination testified young children are often unable to distinguish between "in" and "out."

April testified respondent rubbed her legs, buttocks and "lu-lu" over her clothes while she was sitting in the chair with respondent in the living room watching television. Further, April testified once when she spent the night with Betty, respondent got in bed with her and "he started putting his

fingers in [her]." April's physical examination did not show any signs of sexual battery.

Respondent's stepdaughter and stepniece testified respondent would rub them between their legs when they were in the living room. Further, in the bedroom, respondent would digitally penetrate their vaginas.

██ Although there was no direct evidence that respondent digitally penetrated Betty, Betty's testimony that respondent touched her and it hurt and the results of her physical examination were sufficient to create a jury question as to whether there was any intrusion. *See State v. Mathis, supra* (similar testimony was sufficient to create a jury question on this issue).

██ However, in Nina's case the evidence was insufficient to create a jury issue on penetration. Nina's testimony did not establish an intrusion. Inappropriate touching can cause a child to "feel bad." Without more, this statement is not sufficient evidence of an intrusion. There was no circumstantial evidence presented to create a question for the jury on the issue. Nina's physical examination revealed no signs of a sexual battery. Further, because Nina claimed respondent fondled her in the living room, April's testimony supported the finding that respondent only touched Nina. According to April, respondent only touched her in the living room and he only attempted penetration in the bedroom. Likewise, respondent's stepdaughter's and stepniece's testimony supported this same conclusion.

██ Therefore, the Court of Appeals was correct in directing a verdict for respondent on the CSC conviction as to Nina, but it erred in reversing respondent's CSC conviction as to Betty.[1]

---

1. Respondent claims the Court of Appeals erred in refusing to find the trial judge should have directed a verdict on the lewd act committed against Megan. The Court of Appeals did not explicitly address this issue in its opinion, and respondent did not raise this issue for rehearing. Accordingly, this issue is not preserved for further review. Rule 226(d)(2), SCACR; *Anonymous v. State Bd. of Medical Examiners,* 329 S.C. 371, 496 S.E.2d 17 (1998); *Bonaparte v. Bonaparte,* 317 S.C. 256, 452 S.E.2d 836 (1995) (where the Court of Appeals does not address a particular issue, petitioner cannot argue the merits of the issue in a

## II.

The State contends the Court of Appeals erred in finding a witness may be impeached under Rule 609(a)(2), SCRE, with a prior shoplifting conviction. The Court of Appeals concluded this error prejudicially affected respondent's ability to question the truthfulness of the witness' testimony. *State v. Johnson, supra.*

The trial judge refused to allow respondent to impeach Cynthia Barfield, April's mother, with a shoplifting conviction. The judge found federal precedent interpreting Rule 609(a)(2), FRE,[2] which does not allow impeachment by a prior shoplifting conviction, to be persuasive on this issue.

Rule 609(a)(2), SCRE, provides:

For the purpose of attacking the credibility of a witness ... (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Under this rule, if the conviction involves dishonesty or false statement, it is automatically admissible without having to balance its probative value against its prejudicial effect. Rule 609(a)(2), SCRE, does not define or list the crimes involving dishonesty or false statement.

■ We agree with the Court of Appeals' holding that a witness may be impeached under Rule 609(a)(2), SCRE, with a prior shoplifting conviction. In *State v. Shaw*, 328 S.C. 454, 492 S.E.2d 402 (Ct.App.1997), the Court of Appeals decided this exact issue. We find that opinion persuasive and adopt its reasoning. As stated by the Court of Appeals:

Common sense tells us that anyone who, in violation of the shoplifting statute, takes and carries away a storekeeper's merchandise with intent to deprive the owner of its posses-

---

petition for a writ of certiorari because the issue is not preserved for review; petitioner must instead argue the Court of Appeals erred in failing to address the issue if, of course, that was raised in a petition for rehearing). Further, this issue is without merit. Although Megan did not testify at trial, Maryann testified she saw respondent touch Megan on her "bottom" while Megan was sitting in his lap. This was sufficient evidence to create a jury question on this issue.

**2.** Rule 609(a)(2), SCRE, is almost identical to 609(a)(2), FRE.

sion without paying for it, or alters or removes a label or price tag in an attempt to buy a product at less than its value, or transfers merchandise from its proper container for the purpose of depriving a storekeeper of its value acts dishonestly.

*Id.* at 454, 492 S.E.2d at 404.

Because the trial judge erred in preventing respondent from impeaching Cynthia Barfield with her shoplifting conviction, this Court must determine if this error prejudiced respondent.

■ In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court set forth certain factors an appellate court should consider in determining whether the erroneous exclusion of evidence of a witness' bias constitutes harmless error. These include: the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, whether other evidence corroborates or contradicts the witness' testimony, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. While the harmless error ruling in *Van Arsdall* dealt specifically with witness bias, this Court has held the *Van Arsdall* factors apply with equal force in determining a harmless error violation relating to any issue of witness credibility. *See State v. Holmes*, 320 S.C. 259, 464 S.E.2d 334 (1995), *cert. denied*, 517 U.S. 1248, 116 S.Ct. 2507, 135 L.Ed.2d 197 (1996); *State v. Gadsden*, 314 S.C. 229, 442 S.E.2d 594 (1994).

■ Cynthia Barfield is April's mother. Her testimony provided some corroboration of the allegations made in this case. Ms. Barfield testified that April began to masturbate and have nightmares following the incident and that April suffered rashes during the time period the sexual abuse was occurring.[3] However, April's testimony sufficiently established respondent sexually abused her and Ms. Barfield's testimony was unnecessary to bolster the victims' allegations of abuse. The State did not even refer to Ms. Barfield's testimony during its closing argument. Obviously, the testimony was not critical to the State's case. Further, defense counsel was allowed to extensively cross-examine and discredit

---

3. April's physical examination did not reveal any signs of inflammation.

Ms. Barfield about her lifestyle. Accordingly, we find this error harmless beyond a reasonable doubt. *State v. Holmes, supra.*

## *III.*

During direct examination, Detective Hite, the arresting officer, was discussing his conversation with respondent after his arrest and stated, "I then asked him would he be willing to submit to a polygraph examination and he—". When respondent immediately objected, the jury was removed from the courtroom, and respondent moved for a mistrial on the ground that testimony concerning the offer of a polygraph test is inadmissible. Defense counsel argued a curative instruction could not cure the impact on the jury because the inference was respondent either refused to submit to the polygraph test or took the test and failed it. The trial judge denied the motion for a mistrial and issued extremely thorough curative instructions to the jury. Respondent renewed his request for a mistrial following the instructions.[4]

The Court of Appeals indicated it had "serious doubts whether the mention of the polygraph test, in light of the curative instructions given here, amounts to reversible error." However, the court stated the error "must be considered in determining the fairness of [respondent's] trial." *State v. Johnson, supra.*

The decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Crim,* 327 S.C. 254, 489 S.E.2d 478 (1997). The power of the court to declare a mistrial should be used with the greatest caution and for plain and obvious causes. *Id.* A mistrial should not be ordered in every case where incompetent evidence is received. *Id.* An instruction to disregard objectionable evidence is usually deemed to cure the error in its admission unless on the

---

4. The State argues this issue is not preserved for review. We disagree. Respondent adequately preserved this issue for review. *State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied,* 520 U.S. 1123, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997) (the issue is not preserved for review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge *or* move for a mistrial).

facts of the particular case it is probable that notwithstanding such instruction the accused was prejudiced. *Id.*

Evidence regarding the results of a polygraph test or the defendant's willingness or refusal to submit to one is inadmissible. *See State v. McGuire*, 272 S.C. 547, 253 S.E.2d 103 (1979) (witnesses should avoid mentioning polygraph examinations; however, if it is mentioned, the trial judge should be meticulous to see that no improper inference is created by the testimony); *State v. Pressley*, 290 S.C. 251, 349 S.E.2d 403 (1986) (because the trial judge allowed repeated references to appellant's submission to a polygraph examination, the jury instruction to disregard the polygraph results could not cure the prejudice to appellant); *State v. Wright*, 322 S.C. 253, 471 S.E.2d 700 (1996) (the results of a polygraph test are inadmissible). The admission of such testimony has been ruled harmless error where the trial court properly admonished the jury to disregard the testimony. 29 Am.Jur.2d *Evidence* § 546 (1994).

In our opinion, the mere inadvertent mention of an offer to take a polygraph test does not result in error. Further, the extensive curative instruction given by the trial judge cured any possible prejudice caused by the brief mention of an offer of a polygraph examination. *Compare with State v. Pressley, supra* (repeated references to a polygraph examination could not be cured by an instruction for the jury to disregard the testimony where it was shown that appellant confessed immediately after taking the examination); *State v. McGuire, supra* (the trial judge failed to ensure that no improper inference was created by the mention of an offer to take a polygraph exam).

*IV.*

The State asserts the Court of Appeals erred in finding the trial judge improperly admitted into evidence the search warrant and the testimony regarding the items seized pursuant to the execution of the search warrant. The Court of Appeals found this evidence was irrelevant and prejudicial.

Before the arresting officer testified, the solicitor informed the trial judge she was not going to introduce into evidence the videotapes or the vibrator seized by the police during the

execution of the search warrant at respondent's apartment. Instead, she planned to introduce the search warrant and return during the testimony of the officer who seized the evidence. Defense counsel objected on the ground that the warrant was not relevant. Further, defense counsel stated "I will object to any kind of testimony as to what [the officer] seized as irrelevant." During the course of the arresting officer's testimony, the solicitor sought to admit the search warrant and return into evidence. Defense counsel objected and argued the search warrant was inadmissible hearsay and irrelevant. According to defense counsel, "the warrant itself *and all that evidence* is inadmissible and highly prejudicial, just by the inferences." (emphasis added). The trial judge admitted the warrant and allowed the officer to identify the various items seized pursuant to the execution of the search warrant, including several pornographic videotapes, condoms, handcuffs, a vibrator, and numerous photographs. When the State sought to introduce the photographs into evidence, defense counsel again objected on the ground of relevancy. The trial judge overruled the objection. The trial judge again overruled defense counsel's objection when the officer testified that some of the videotapes seized contained pornography.

Generally, a search warrant and an accompanying affidavit are not admissible in a criminal case. *State v. Alexander*, 303 S.C. 408, 401 S.E.2d 167 (1991); *State v. Arther*, 290 S.C. 291, 350 S.E.2d 187 (1986); *State v. Latham*, 275 S.C. 550, 273 S.E.2d 772 (1981); *State v. Smith*, 230 S.C. 164, 94 S.E.2d 886 (1956). However, error in their admission is reversible only upon a showing of prejudice. *State v. Alexander, supra.* The prejudicial character of the error must be determined from its relationship to the entire case. *Id.*

The allegations in the affidavit concerning the existence of pornographic material and sexual aids and testimony regarding the items seized were irrelevant to the charges against respondent. The allegations were not corroborated by other competent testimony nor were the allegations cumulative to properly admitted evidence. None of the victims claimed respondent photographed them, viewed pornographic material with them or used these sexual aids with them.

Accordingly, the error in admitting the search warrant and testimony about the items seized was prejudicial to respondent.[5]

██ The State further argues any error in the admission of this evidence was harmless beyond a reasonable doubt. Because we do not find evidence of respondent's guilt overwhelming, the admission of the evidence is not harmless. *State v. Singleton,* 303 S.C. 313, 400 S.E.2d 487 (1991) (refusing to find error harmless where the evidence of guilt was not overwhelming). Except for Betty,[6] the State relied on the minor victims' testimony to convict respondent.[7] Respondent denied any wrongdoing and offered his version of the incidents during his testimony. Thus, it was basically a swearing contest between the minor victims and respondent. The admission of this totally irrelevant testimony served only to unfairly prejudice respondent.

## V.

██ Although the Court of Appeals did not find the exclusion of the prior shoplifting conviction, the mention of the polygraph test and, questionably, the admission of the search

---

5. The State argues respondent failed to adequately object to the officer's testimony regarding the items seized during the execution of the search warrant. Therefore, any error in the admission of the search warrant was not prejudicial because it was merely cumulative to evidence introduced without objection and which was subject to cross examination. *State v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990) (admission of evidence is harmless where it is cumulative to other evidence admitted without objection); *State v. Howard,* 295 S.C. 462, 369 S.E.2d 132 (1988) (when information contained in the improperly admitted affidavit is merely cumulative to other properly admitted evidence, there is no prejudice). In our opinion, respondent's objection was sufficient to include both the admission of the search warrant and the officer's testimony regarding the items seized on the ground of irrelevancy. Therefore, neither the warrant nor the testimony about the items seized was relevant evidence and should not have been admitted.

6. The physician who examined Betty admitted her injury could have been the result of an inflammation.

7. The stepdaughter's and stepniece's testimony did not have a great impact on the jury because these incidents occurred many years earlier and the incidents were investigated and dismissed at the time they allegedly occurred.

warrant were reversible errors in themselves, it held the cumulative effect of these errors warranted reversal because the errors deprived respondent of a fair trial. *State v. Johnson, supra.*

In our opinion, the facts of this case do not support a finding cumulative errors warranted reversal. While the admission of the search warrant was prejudicial error, the error of refusing to admit the prior shoplifting conviction for impeachment purposes was not prejudicial and the inadvertent mention of the polygraph examination was not error. Respondent must demonstrate more than error in order to qualify for reversal on this ground. Instead, the errors must adversely affect his right to a fair trial. *See Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 459 S.E.2d 374 (1995) (cumulative error doctrine provides relief to a party when a combination of errors that are insignificant by themselves have the effect of preventing a party from receiving a fair trial and it requires the cumulative effect of the errors to affect the outcome of the trial). Here, respondent has failed to show he suffered prejudice warranting a new trial based on cumulative trial error. *Compare with State v. Peterson,* 287 S.C. 244, 335 S.E.2d 800 (1985) (although Court held cumulation of errors warranted reversal, each error caused prejudice against appellant); *State v. Freeman,* 319 S.C. 110, 459 S.E.2d 867 (Ct.App.1995) (finding the cumulative effect of the trial conduct, not trial errors, warranted reversal). "As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *State v. Mitchell,* 330 S.C. 189, 199–200, 498 S.E.2d 642, 647–48 (1998) (quoting *Delaware v. Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436, 89 L.Ed.2d at 684).

However, as discussed in Part IV, the error in admitting the search warrant and testimony regarding the items seized was prejudicial and warrants reversal of respondent's conviction.

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., TOAL, MOORE and WALLER, JJ., concur.