574 S.E.2d 203

**The STATE, Respondent,**

v.

**David Scott MORGAN, Appellant.**

**No. 3577.**

Court of Appeals of South Carolina.

Heard Nov. 5, 2002.

Decided Dec. 9, 2002.

360

Assistant Appellate Defender Tara S. Taggart, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

ANDERSON, J.

David Scott Morgan was charged with criminal sexual conduct (CSC) with a minor, a violation of S.C.Code Ann. § 16-3-655(1) (1985). He was convicted and sentenced to fifteen years. Morgan's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel attached a petition to be relieved from representation, asserting there are no directly appealable

issues of arguable merit. Morgan did not file a *pro se* response. After a thorough review of the record, in accordance with *Anders* and *State v. Williams,* 305 S.C. 116, 406 S.E.2d 357 (1991), this Court ordered the parties to address whether the trial court erred in denying Morgan's motion for a directed verdict on the charge of CSC with a minor. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Detective Stephen Thompson of the Rock Hill Police Department took Morgan's six-year-old daughter (the victim) into emergency protective custody on August 30, 1999. On September 10, 1999, Department of Social Services investigators Tammy Boheler and a Ms. Kline [1] drove the victim to an appointment with a psychologist. While en route, Kline asked the victim a series of questions about "good touching" and "bad touching." During the course of this conversation, the victim denied having ever been touched in her private areas. However, in a subsequent interview with Boheler, the victim complained of sexual assault by Morgan. As a result of the victim's allegations, Boheler contacted Detective Thompson, who met with the victim four days later. At that meeting, the victim again stated Morgan had sexually abused her. The next day, Morgan was arrested.

The York County Grand Jury indicted Morgan for criminal sexual conduct with a minor. The indictment alleged Morgan "perform[ed] cunnilingus upon his daughter" and "rubb[ed] his penis into her vaginal area."

Morgan exercised his right to a jury trial. The victim testified during the State's case-in-chief. She averred Morgan had "licked" her vagina with his tongue. The victim further related that Morgan had touched her vagina with his hand and his penis, but that Morgan did not "go inside" her with his penis. Nevertheless, the victim declared it had "hurt" when Morgan touched her with his penis. The victim stated Morgan referred to his "private part" as "his dick" and that it hurt when he touched her "private part" with "his dick." A

---

1. Ms. Kline's first name is not identified within the record.

physical examination of the victim revealed no genital abnormalities.

At the conclusion of the State's case, Morgan moved for a directed verdict, contending conviction for CSC with a minor required evidence of intrusion or penetration and that no such evidence existed. The judge denied the motion. After testifying in his own defense, Morgan renewed his directed verdict motion, which the judge denied as to the cunnilingus allegation. However, the judge ruled he would not instruct the jury on the sexual intercourse charge because the State had not demonstrated there had been an "intrusion" by Morgan into the victim's vagina. Thus, the only issue for jury consideration was whether Morgan had committed sexual battery on the victim by performing cunnilingus on her.

The jury found Morgan guilty. The circuit judge sentenced Morgan to fifteen years.

## ISSUE

Is the act of cunnilingus statutorily encapsulated as a separate and distinct act constituting sexual battery under S.C.Code Ann. § 16–3–651(h) (1985)?

## STANDARD OF REVIEW

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. McLauren,* 349 S.C. 488, 563 S.E.2d 346 (Ct.App.2002). On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Walker,* 349 S.C. 49, 562 S.E.2d 313 (2002); *State v. Condrey,* 349 S.C. 184, 562 S.E.2d 320 (Ct.App.2002). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999).

*LAW/ANALYSIS*

Appellate counsel asserts Morgan was entitled to a directed verdict. We disagree.

## I. "CUNNILINGUS" AS A SEPARATE AND DISTINCT ACT OF "SEXUAL BATTERY"

Citing § 16-3-651(h), Morgan's trial counsel argued, at the directed verdict stage, the State was required to prove an "intrusion" into the victim's vagina before obtaining a conviction against Morgan. According to counsel, "[w]hile the statute says that cunnilingus may be a sexual battery, that still does not obviate the need for intrusion." Counsel claimed no such "intrusion" occurred as a result of the cunnilingus being performed upon the victim. We disagree with Morgan's interpretation of § 16-3-651(h).

### A. Statutory Authority: Sections 16-3-655(1) & 16-3-651(h)

Section 16-3-655(1) provides "[a] person is guilty of criminal sexual conduct in the first degree if the actor engages in *sexual battery* with [a] victim who is less than eleven years of age." S.C.Code Ann. § 16-3-655(1) (1985) (emphasis added). "Sexual battery" is statutorily defined as "sexual intercourse, *cunnilingus,* fellatio, anal intercourse, *or any intrusion, however slight,* of any part of a person's body or of any object *into the genital or anal openings of another person's body,* except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C.Code Ann. § 16-3-651(h) (1985) (emphasis added).

### B. Statutory Construction

Penal statutes are strictly construed against the State and in favor of the defendant. *State v. Fowler,* 322 S.C. 157, 470 S.E.2d 393 (Ct.App.1996). The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *State v. Baucom,* 340 S.C. 339, 531 S.E.2d 922 (2000); *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language

used, and that language must be construed in the light of the intended purpose of the statute. *State v. Hudson,* 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999). The determination of legislative intent is a matter of law. *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998).

The legislature's intent should be ascertained primarily from the plain language of the statute. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 468 S.E.2d 649 (1996); *City of Sumter Police Dep't,* 330 S.C. at 375, 498 S.E.2d at 896. When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Hudson,* 336 S.C. at 246, 519 S.E.2d at 581.

The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *Southern Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 412 S.E.2d 377 (1991). Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997); *see also Stephen,* 324 S.C. at 340, 478 S.E.2d at 77 (statutory provisions should be given reasonable and practical construction consistent with purpose and policy of entire act). In interpreting a statute, the language of the statute must be construed in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 420 S.E.2d 843 (1992); *Hudson,* 336 S.C. at 246, 519 S.E.2d at 582. Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction. *Higgins v. State,* 307 S.C. 446, 415 S.E.2d 799 (1992).

If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no need to

employ rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal·v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995); *Brassell,* 326 S.C. at 560, 486 S.E.2d at 494. When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994). However, if the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Hudson,* 336 S.C. at 247, 519 S.E.2d at 582. The statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Brassell,* 326 S.C. at 561, 486 S.E.2d at 495. Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *City of Sumter Police Dep't,* 330 S.C. at 376, 498 S.E.2d at 896.

## C. Cunnilingus/Sexual Battery

The act of cunnilingus is statutorily enumerated as "sexual battery." The etymological construction of the statute reveals legislative intent to separate acts and conduct. The phrase "or any intrusion" is grammatically located after *seriatim* presentation of sexual intercourse, cunnilingus, fellatio, and anal intercourse. There is no modifying efficacy of the phrase "or any intrusion" as juxtaposed to "cunnilingus." The word "or" is *"a coordinating conjunction introducing an alternative." Webster's New Twentieth Century Dictionary* 1257 (2d ed.1983) (emphasis added).

## II. INTRUSION OR PENETRATION

Morgan's trial counsel maintained the phrase "or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body," found in § 16-3-651(h), required the State to demonstrate that there was an "intrusion" by Morgan when he performed cunnilingus on the victim. We disagree.

Morgan's counsel cited *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999), for the proposition that the State must prove "intrusion" to obtain a conviction for criminal sexual

conduct. In *Johnson*, the Court considered a defendant's touching of two female victims' genital areas with his hand. One victim testified the defendant touched her and it "hurt." There was evidence on physical examination of a vaginal injury. The Court concluded this was sufficient evidence of digital penetration to create a jury question as to whether there was any intrusion. As to a second victim, she declared the defendant touched her and it "made [her] feel bad." There was no evidence of sexual battery upon physical examination. In that case, the Court found the evidence was insufficient to create a jury issue on penetration. The *Johnson* Court stated: "[a] sexual battery is defined as an 'intrusion, however slight, ... into the genital or anal openings of another person's body.'" *Id.* at 84, 512 S.E.2d at 798 (quoting S.C.Code Ann. § 16–3–651(h) (1985)) (ellipsis in original).

In *Johnson*, the circumstances involved manual genital touching. *Johnson* is factually and legally distinguishable.

## III. OTHER JURISDICTIONS

In *State v. Beaulieu*, 674 A.2d 377 (R.I.1996), the Supreme Court of Rhode Island reviewed a statute very similar to our section 16–3–651(h), in which the South Carolina General Assembly defined "sexual battery" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body ...." The court, in a superb analysis, explained that "G.L.1956 § 11–37–1(8) does not require **actual penetration, only sexual penetration.**" *Id.* at 378 (emphasis added).

Explicating the word "cunnilingus" in a medical/legal application, the *Beaulieu* court continued:

The young victim in this case testified that the defendant had "licked her vagina." If that act occurred, that was cunnilingus, which does not require penetration. Cunnilingus is medically defined as "sexual stimulation by licking or kissing the vulva or clitoris; a type of oral genital sexual activity." *Stedman's Medical Dictionary* 345 (5th Unabridged Lawyers' Ed.1982). The "vulva" is defined as the covering "of the external genitalia of the female." *Id.* at 1571. All that is required to establish the first-degree sexual offense of cunnilingus is that the cunnilinguist lick or

kiss the female genitalia, and penetration of the vagina is not necessary. *State v. Cassey,* 543 A.2d 670, 679 (R.I. 1988).

From both the statutory and the medical anatomy viewpoint, the act of cunnilingus, which requires the male tongue to reach the female vagina, assumes the necessary penetration or intrusion into the female genitalia. *State v. Cassey,* 543 A.2d 670 (R.I.1988). Cunnilingus does not require actual vaginal penetration.

*Id.* at 378.

The case of *Stephan v. State,* 810 P.2d 564 (Alaska Ct.App. 1991), elucidated with clarity the sexual act of "cunnilingus" as juxtaposed to "sexual penetration." *Stephan* instructed:

The evidence at trial in support of Count VII of the indictment proved that the defendant made oral contact with the victim's vaginal area, but that neither the defendant's mouth nor tongue intruded into the genital opening. The trial court found that such contact, even without actual penetration of the genitals, was sufficient to prove "sexual penetration" through the act of "cunnilingus."

The defendant now argues that in the absence of actual penetration of the opening, "sexual penetration" is not proven under the statute . . . . .

. . . The trial court instruction stated that *"cunnilingus" and "fellatio" do not require penetration of or by any organ, but that mere contact with the mouth and the genitals was sufficient* (citation omitted).

This court applied the dictionary definition and determined that *the meaning[ ] of "cunnilingus" . . . do[es] not require penetration by the mouth or tongue, but that contact between the mouth or tongue and the genitals was sufficient.*

*Id.* at 568 (emphasis added); *see also Murray v. State,* 770 P.2d 1131 (Alaska App.1989) (cunnilingus does not require intrusion into genital area).

Finally, our sister state of North Carolina, in the case of *State v. Ludlum,* 303 N.C. 666, 281 S.E.2d 159 (1981), determined:

Whether penetration is required before cunnilingus, as the word is used in the statute, may occur is a question really of legislative intent. What did the Legislature mean by its use of the term?

In arriving at this intent, we look first to the ordinary meaning of the word. Unless statutory words have acquired some technical meaning they are construed in accordance with their ordinary meaning unless some different meaning is definitely indicated by the context. *State v. Lee,* 277 N.C. 242, 176 S.E.2d 772 (1970). Courts may and often do consult dictionaries for such meanings. *Id.; State v. Martin,* 7 N.C.App. 532, 173 S.E.2d 47 (1970).

Cunnilingus is defined by Webster's Third New International Dictionary (Unabridged) (hereinafter Webster's) as "stimulation of the vulva or clitoris with the lips or tongue." The word is defined by the Oxford English Dictionary to mean, "(o)ral stimulation of the vulva or clitoris." (Supplement, Vol.I, 1972). According to *Gray's Anatomy,* (28th Edition, 1966) at pp. 1328–1329, the external genital organs of the female consist, in pertinent part, of the mons pubis, labia majora, labia minora, and the clitoris. The outermost of these are the labia majora. Next come the labia minora. The innermost of these anatomical structures is the clitoris. *Gray's Anatomy* also teaches that the term "vulva, as generally applied, includes all these parts" (in addition to the vestibule of the vagina, the bulb of the vestibule, and the greater vestibule glands). According to Webster's, the term "vulva" means: "1 a: the external parts of the female genital organs, b: the opening between the projecting parts of the external organs."

If the term "vulva" means all of the external female genitals, as the cited authorities say, and the clitoris lies beneath both the outer and inner labia, then in order for the vulva in its entirety or the clitoris to be stimulated, there must be some penetration of at least the outer labia. On the other hand, one may reasonably argue that stimulation of the vulva means stimulation of any part of the vulva, for example, the labia majora, or the mons pubis.

We are satisfied the Legislature did not intend that the vulva in its entirety or the clitoris specifically must be stimulated in order for cunnilingus to occur. To adopt this

view would saddle the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof. We think, rather, that given the possible interpretations of the word as ordinarily used, the Legislature intended to adopt that usage which would avoid these difficulties. We conclude, therefore, that the Legislature intended by its use of the word' cunnilingus to mean stimulation by the tongue or lips of any part of a woman's genitalia.

Our view of the legislative intent is borne out by the context in which the word is used in G.S. 14–27.1(4) and the overall statutory scheme, Article 7A, Chapter 14, by which this kind of act is made punishable. The statute, G.S. 14–27.1(4) defines "sexual act" as "cunnilingus, fellatio, analingus, or anal intercourse ... (or) the penetration, however slight, by any object into the genital or anal opening of another person's body (except for) accepted medical purposes." If the Legislature intended cunnilingus to require penetration by the lips or tongue, then its inclusion in the statute as a form of sexual act would have been superfluous because, the lips or tongue being themselves objects, the act would have been prohibited under the clause dealing specifically with penetrations.

*Id.* at 162–63.

Courts from other jurisdictions have rejected arguments concerning the necessity of vaginal penetration in the act of cunnilingus. *See Roundtree v. United States,* 581 A.2d 315 (D.C.1990) (to prove cunnilingus has occurred, it is not necessary to establish that either the victim's genitalia penetrated mouth of defendant or that defendant's tongue penetrated victim's genitalia); *Partain v. State,* 63 Md.App. 260, 492 A.2d 669 (1985) (cunnilingus does not require penetration of the genitals); *Commonwealth v. Benoit,* 26 Mass.App.Ct. 641, 531 N.E.2d 262 (1988) (cunnilingus does not require proof of some penetration of the female's genital opening); *People v. Lemons,* 454 Mich. 234, 562 N.W.2d 447 (1997) (cunnilingus does not require penetration for the sexual act to be performed); *People v. Legg,* 197 Mich.App. 131, 494 N.W.2d 797 (1992) (act of cunnilingus, by definition, involves act of sexual penetration; defendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus; the labia are

included in the "genital openings" of the female); *State v. Blom*, 358 N.W.2d 63 (Minn.1984) (penetration of the vagina is not required for the act of cunnilingus to constitute sexual penetration under statute); *Johnson v. State*, 626 So.2d 631 (Miss.1993) (skin to skin contact between person's mouth, lips, or tongue and woman's genital opening, whether by kissing, licking, or sucking, is "sexual penetration" through act of cunnilingus within meaning of sexual battery statute); *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600, 607 (1987) (stating "[w]e need not indulge in an extensive anatomy lesson concerning the clitoris, an organ which realistically defies 'sexual penetration' as envisioned in § 28–318(6). . . . Therefore, once the perpetrator's lips or tongue touches any part of a female's genitalia, the act of cunnilingus is complete, irrespective of any actual penetration of the genitalia."); *State v. Ramirez*, 98 Ohio App.3d 388, 648 N.E.2d 845 (1994) (penetration of vagina is not required to complete act of cunnilingus).

 The victim testified Morgan "licked" her vagina. This testimony constituted evidence of cunnilingus, a separate and distinct act of sexual battery. Therefore, the trial judge properly permitted the case to go to the jury regarding whether Morgan committed the offense of criminal sexual conduct with a minor.

### CONCLUSION

The act of cunnilingus is statutorily enumerated as "sexual battery." The etymological construction of the statute reveals legislative intent to separate acts and conduct. The phrase "or any intrusion" is grammatically located after *seriatim* presentation of sexual intercourse, cunnilingus, fellatio, and anal intercourse. There is no modifying efficacy of the phrase "or any intrusion" as juxtaposed to "cunnilingus." The word "or" is a coordinating conjunction introducing an alternative.

We hold section 16–3–651 is clear and unambiguous. The term "cunnilingus" identifies a separate and distinct act constituting "sexual battery." "Cunnilingus," in its plain and ordinary meaning, is defined as oral stimulation of the vulva or clitoris with the lips or tongue. "Cunnilingus" is medically and legally accomplished by licking or kissing the vulva or clitoris. It is a type of oral genital sexual activity.

We rule the sexual offense of "cunnilingus" is complete when the cunnilinguist licks or kisses the female genitalia. Penetration of the vagina is *NOT* necessary or required.

Assuming the statute could be construed as requiring "sexual penetration," this Court concludes the very act of "cunnilingus" involves sexual penetration.

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.