378 S.C. 160 (2008)
662 S.E.2d 430
Thomas R. WIETERS, M.D., Respondent,
v.
BON-SECOURS-ST. FRANCIS XAVIER HOSPITAL, INC., Allen P. Carroll, William B. Ellison, Jr., Jeffrey M. Deal, M.D., Sharron C. Kelly, and Esther Lerman Freeman, Psy. D.
of whom:
Bon-Secours-St. Francis Xavier Hospital, Inc., Allen P. Carroll, William B. Ellison, Jr., Jeffrey M. Deal, M.D., and Sharron C. Kelly are Appellants.
No. 4374.
Court of Appeals of South Carolina.
Heard April 8, 2008.
Filed April 23, 2008.
Rehearing Denied June 26, 2008.
*162 James J. Hinchey, Jr., of Charleston, for Appellants.
Gregg Meyers, of Charleston, for Respondent.
*163 Ralph W. Barbier and Jeanne M. Born, both of Columbia, for Amicus Curiae South Carolina Hospital Association.
ANDERSON, J.
In this action for defamation and civil conspiracy brought by Dr. Thomas R. Wieters (Wieters) against Bon-Secours-St. Francis Xavier Hospital, Inc. (Hospital), Allen P. Carroll, Dr. William B. Ellison, Jr., Dr. Jeffrey M. Deal (Deal), and Sharron C. Kelly, Hospital and these individuals (collectively Hospital Personnel) appeal an order compelling discovery. Dr. Esther Lerman Freeman (Freeman) is a defendant but not a party to this appeal. We reverse.

FACTUAL/PROCEDURAL BACKGROUND
Wieters is a physician licensed to practice in South Carolina. His medical staff privileges were summarily suspended by Hospital. Pursuant to the Hospital's Medical Staff Bylaws, he was granted a hearing by a committee of the medical staff and an appellate hearing before a committee of the Hospital's Board. After each hearing, the respective committee upheld the suspension.
As required by federal law, Hospital reported Wieters' suspension to the National Practitioner Data Bank. Wieters sued Hospital and Hospital Personnel for defamation, alleging the report they transmitted to the National Practioner Data Bank contained false information about him. He maintains Hospital, Hospital Personnel, and Freeman engaged in a conspiracy to injure him.
During discovery, Wieters, through his attorney, deposed Deal and a non-party witness, Dr. Donald Pocock (Pocock). Wieters inquired about the circumstances that led to the summary suspension of other physicians at Hospital, its affiliate Roper Hospital, and other hospitals where the witnesses had worked. Both Deal and Pocock testified how many physicians they recall being suspended during their service on peer review committees, but both deponents were instructed by their counsel or Hospital's counsel to not answer questions concerning what led to the other physicians' suspensions, citing the confidentiality provisions of South Carolina's Peer Review Statute, section 40-71-20 of the South Carolina Code.
*164 Hospital and Hospital Personnel sought a protective order pursuant to Rule 26, SCRCP. Wieters moved to compel the witnesses to answer the deposition queries. The circuit court issued an order compelling Deal and Pocock to answer general questions regarding other summary suspensions without identifying the physicians involved. The relevant section of the order reads:

Deposition questions not answered. This case is about, in part, the information which related to a summary suspension of the plaintiff doctor. In deposition, witnesses Dr. Deal and Dr. Pocock were asked to provide a general description of the circumstances which prompted other applications of summary suspension. All such information was refused, and the witnesses instructed not to answer, citing privilege. The Hospital defendants filed a motion for a protective order claiming the information was protected peer review citing S.C.Code § 40-71-20 and McGee v. Bruce Hospital, 321 S.C. 340, 468 S.E.2d 633 (1996).
The information relates to the claim of the plaintiff and should be provided. The plaintiff has not requested identifying information, only the nature of the circumstances that gave rise to other applications of summary suspension, and no privilege prohibits that information being provided. The plaintiff may pose the questions the witnesses were instructed not to answer, and to make any related follow up questions.
Hospital and Hospital Personnel appeal the order compelling Deal and Pocock to answer the deposition questions.[1]

ISSUES
1. Is the circuit court's order compelling discovery appealable?
2. Do the deposition questions unanswered by Deal and Pocock pertain to confidential committee proceedings *165 protected by the Peer Review Statute, South Carolina Code section 40-71-20?

STANDARD OF REVIEW
A circuit court judge's rulings on discovery matters will not be disturbed on appeal absent a clear abuse of discretion. Dunn v. Dunn, 298 S.C. 499, 502, 381 S.E.2d 734 (1989); Bayle v. S.C. Dep't of Transp., 344 S.C. 115, 128, 542 S.E.2d 736, 742 (Ct.App.2001). The burden is upon the party appealing the order to demonstrate the court abused its discretion. Karppi v. Greenville Terrazzo Co., Inc., 327 S.C. 538, 542, 489 S.E.2d 679, 681 (Ct.App.1997).
An abuse of discretion may be found by this Court where the appellant shows that the conclusion reached by the circuit court was without reasonable factual support, resulted in prejudice to the right of appellant, and, therefore, amounted to an error of law. Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390, 395, 396 S.E.2d 369, 372 (1990); Darden v. Witham, 263 S.C. 183, 209 S.E.2d 42 (1974), overruled on other grounds, Glasscock v. Glasscock, 304 S.C. 158, 403 S.E.2d 313 (1991).

LAW/ANALYSIS

I. Appealability of discovery orders
As a general rule, only final judgments are appealable. Culbertson v. Clemens, 322 S.C. 20, 23, 471 S.E.2d 163, 164 (1996); Bolding v. Bolding, 283 S.C. 501, 323 S.E.2d 535 (Ct.App.1984). "Any judgment or decree, leaving some further act to be done by the court before the rights of the parties are determined, is interlocutory and not final." Ex parte Wilson, 367 S.C. 7, 625 S.E.2d 205 (2005).
An order directing a non-party to submit to discovery is not immediately appealable. Lowndes Products, Inc. v. Brower, 262 S.C. 431, 205 S.E.2d 184 (1974). Instead, a non-party must be held in contempt before an appeal may be taken challenging the validity of the discovery order. Ex parte Whetstone, 289 S.C. 580, 347 S.E.2d 881 (1986).
*166 An order compelling a party to submit to discovery is interlocutory and not directly appealable. Hamm v. South Carolina Public Service Com'n, 312 S.C. 238, 241, 439 S.E.2d 852, 853 (1994); Waddell v. Kahdy, 309 S.C. 1, 419 S.E.2d 783 (1992); Wallace v. Interamerican Trust Co., 246 S.C. 563, 144 S.E.2d 813 (1965). "This discovery order is not a final order because it leaves some further act to be done by the court before the rights of the parties in an enforcement proceeding are determined." Ex parte Wilson, 367 S.C. at 13, 625 S.E.2d at 208.
Absent some specialized statute, the immediate appealability of an interlocutory or intermediate order depends on whether the order falls within South Carolina Code section 14-3-330. Baldwin Const. Co., Inc. v. Graham, 357 S.C. 227, 593 S.E.2d 146 (2004). Section 14-3-330 states:
The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:
(1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions; provided, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from;
(2) An order affecting a substantial right made in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleading in any action;
(3) A final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment; and
(4) An interlocutory order or decree in a court of common pleas granting, continuing, modifying, or refusing an injunction *167 or granting, continuing, modifying, or refusing the appointment of a receiver.
S.C.Code Ann. § 14-3-330 (1976 & Supp.2007).
An order granting a motion to disqualify a party's attorney in a civil case affects a substantial right and may be immediately appealed. Hagood v. Sommerville, 362 S.C. 191, 607 S.E.2d 707 (2005). Such an order must be immediately appealed or any later objection in a subsequent appeal will be waived. Id. The order to unseal the record of a divorce proceeding is immediately appealable. Ex parte Capital U-Drive-It, Inc., 369 S.C. 1, 8, 630 S.E.2d 464, 468 (2006) ("[W]e agree with courts which have been inclined to find such an order immediately appealable because, after a court file is unsealed and the information released, no appellate remedy is likely to repair any damage done by an improper disclosure."). The denial of appellant's motion to proceed anonymously meets the benchmark for appellate review. Doe v. Howe, 362 S.C. 212, 216, 607 S.E.2d 354, 356 (Ct.App.2004) ("The final judgment rule serves the laudatory goal of preventing piecemeal review of matters that are merely steps toward a final judgment. In light of the policy underpinnings of the final judgment rule, exceptions should be recognized cautiously.").
Statutes and rules of court should be construed liberally in favor of the right of appeal. Stroup v. Duke Power Co., 216 S.C. 79, 84, 56 S.E.2d 745, 747 (1949); Haughton v. Order of United Commercial Travelers of Am., 108 S.C. 73, 74-75, 93 S.E. 393, 394 (1917); O'Rourke v. Atl. Paint Co., 91 S.C. 399, 403, 74 S.E. 930, 931 (1912).
The South Carolina Supreme Court considered the same issue before us in the instant case in McGee v. Bruce Hospital System, 312 S.C. 58, 439 S.E.2d 257 (1993). Although McGee involved a medical malpractice wrongful death claim and this case is an action for defamation and conspiracy, both are actions at law and have the same procedural posture. Id. at 60, 439 S.E.2d at 259 ("This matter is before the Court pursuant to the circuit court order granting the plaintiff's motion to compel and instructing the defendant Bruce Hospital System ... to produce the credentialing files and clinical privileges for each of the defendant physicians.").
*168 Because the Supreme Court determined it appropriate to review the discovery order compelling a hospital to produce credentialing files, we hold the order issued by the circuit court is immediately appealable.

II. Principles of statutory interpretation
The issue of interpretation of a statute is a question of law for the court. Univ. of S. Cal. v. Moran, 365 S.C. 270, 275, 617 S.E.2d 135, 137 (Ct.App.2005); see also Catawba Indian Tribe of S.C. v. State of South Carolina, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 256, 169 L.Ed.2d 149 (2007); Charleston County Parks & Recreation Comm'n v. Somers, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995).
The cardinal rule of statutory interpretation is to determine the intent of the legislature. Bass v. Isochem, 365 S.C. 454, 459, 617 S.E.2d 369, 377 (Ct.App.2005), cert. dismissed, 374 S.C. 346, 649 S.E.2d 485 (2007); Georgia-Carolina Bail Bonds, Inc. v. County of Aiken, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003); Smith v. S.C. Ins. Co., 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002); see also Gordon v. Phillips Utils., Inc., 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. McClanahan v. Richland County Council, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); Ray Bell Constr. Co., Inc. v. Sch. Dist. of Greenville County, 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998); State v. Morgan, 352 S.C. 359, 365-66, 574 S.E.2d 203, 206 (Ct.App.2002); State v. Hudson, 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." S.C. Farm Bureau Mut. Ins. Co. v. Mumford, 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).
The legislature's intent should be ascertained primarily from the plain language of the statute. State v. Landis, 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct.App.2004); Morgan, 352 *169 S.C. at 366, 574 S.E.2d at 206; Stephen v. Avins Constr. Co., 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. Mun. Ass'n of S.C. v. AT&T Commc'ns of S. States, Inc., 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); Hitachi Data Sys. Corp. v. Leatherman, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); Morgan, 352 S.C. at 366, 574 S.E.2d at 206; Hudson, 336 S.C. at 246, 519 S.E.2d at 582.
When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. Miller v. Aiken, 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005); Carolina Power & Light Co. v. City of Bennettsville, 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994). If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. Tilley v. Pacesetter Corp., 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003); Paschal v. State Election Comm'n, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); see also City of Camden v. Brassell, 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Bayle, 344 S.C. at 122, 542 S.E.2d at 740 (Ct.App. 2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. Durham v. United Cos. Fin. Corp., 331 S.C. 600, 604, 503 S.E.2d 465, 468 (1998); Adkins v. Comcar Indus., Inc., 323 S.C. 409, 411, 475 S.E.2d 762, 763 (1996); Worsley Cos. v. S.C. Dep't of Health & Envtl. Control, 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); see also Timmons v. S.C. Tricentennial Comm'n, 254 S.C. 378, 402, 175 S.E.2d 805, 817 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous *170 statute. Hodges v. Rainey, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); Bayle, 344 S.C. at 122, 542 S.E.2d at 739.
If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. Morgan, 352 S.C. at 367, 574 S.E.2d at 207; see also Wade v. Berkeley County, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. Hudson, 336 S.C. at 247, 519 S.E.2d at 582; Brassell, 326 S.C. at 561, 486 S.E.2d at 495; City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck, 330 S.C. 371, 376, 498 S.E.2d 894, 896 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. State v. Dawkins, 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002); Adams v. Texfi Indus., 320 S.C. 213, 217, 464 S.E.2d 109, 112 (1995); Brassell, 326 S.C. at 560, 486 S.E.2d at 494.
A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. See Liberty Mut. Ins. Co. v. S.C. Second Injury Fund, 363 S.C. 612, 621, 611 S.E.2d 297, 301 (Ct.App.2005), cert. denied, June 2007; see also Georgia-Carolina Bail Bonds, 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). The real purpose and intent of the lawmakers will prevail over the literal import of the words. Browning v. Hartvigsen, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992).
Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. Unisun Ins. Co. v. Schmidt, 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); Kiriakides v. United Artists Commc'ns, Inc., 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. See Liberty Mut. Ins. Co., 363 S.C. at 622, 611 S.E.2d at *171 302; see also Mid-State Auto Auction v. Altman, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996) (stating that in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole).

III. Legislative/jurisprudential efficacy of peer review
The Peer Review Statute provides:
(A) All proceedings of and all data and information acquired by the committee referred to in Section 40-71-10 in the exercise of its duties are confidential unless a respondent in the proceeding requests in writing that they be made public. These proceedings and documents are not subject to discovery, subpoena, or introduction into evidence in any civil action except upon appeal from the committee action. Information, documents, or records which are otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during the committee proceedings, nor shall any complainant or witness before the committee be prevented from testifying in a civil action as to matters of which he has knowledge apart from the committee proceedings or revealing such matters to third persons....
S.C.Code Ann. § 40-71-20 (Supp.2007).
Deal and Pocock have been ordered by the circuit court to reveal knowledge learned in their service on committees within the scope of South Carolina Code section 40-71-10. The protections of the Peer Review Statute extend to:
an appointed member of a committee of a medical staff of a licensed hospital, provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital ... for any act or proceeding undertaken or performed within the scope of the functions of the committee....
S.C.Code Ann. § 40-71-10 (Supp.2007).
The cognoscenti of health care nomology trust and rely upon Peer Review Statutes as the quiddity and hypostasis of the hospital/physician relationship. The quintessence and elixir of the peer review process is confidentiality. In enacting the Peer Review Statute, the General Assembly struck a *172 balance between a litigant's need to know with the public's interest in quality health care through meaningful peer review. The legislature stated that only in one narrow circumstance does a litigant have access to peer review information, an "appeal from the committee action."
If peer review information is subject to compulsion beyond the narrow boundaries enacted by the legislature, the foundation of the peer review process would be severely compromised. Without the promise of confidentiality of the information, physicians would not fully and completely participate in the process or not participate at all. The lack of candor and openness would hinder and thwart hospitals in their efforts to effectively monitor physicians. This is not an appeal from the committee action, so the exception to the confidentiality of peer review information does not apply.
In McGee v. Bruce Hospital System, the South Carolina Supreme Court expounded upon the reasoning behind the Peer Review Statute, citing cases from West Virginia and Florida:
The overriding public policy of the confidentiality statute is to encourage health care professionals to monitor the competency and professional conduct of their peers to safeguard and improve the quality of patient care. The underlying purpose behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussion among participants in the peer review process.
312 S.C. 58, 61, 439 S.E.2d 257, 259 (1993) (citations omitted). The Court found that the peer review statute protects documents acquired by the committee of the medical staff as part of its decision-making process. Id. at 63, 439 S.E.2d at 260.
The Court distinguished the committee's decision-making process from its consequence:
[W]e find that the outcome of the decision-making process is not protected. Permitting discovery of the effect of the committee proceedings does not inhibit open discussion. In our view, the confidentiality statute was intended to protect *173 the review process, but not restrict the disclosure of the result of the process.
Id. (citations omitted).
The Supreme Court echoed its holding from McGee in Durham v. Vinson, 360 S.C. 639, 602 S.E.2d 760 (2004). The Court analyzed whether the defendant physician's privileging file was protected under the Peer Review Statute and determined the file was not subject to discovery or disclosure. The Court articulated:
The trial court erred by allowing Durham's counsel to ask Dr. Vinson about his failure to fully disclose his privileging file, a file that he was under no obligation to disclose pursuant to section 40-71-20. If physicians can be questioned before the jury about the refusal to produce this privileged information, the effect is to pressure them toward disclosure of the privileging file. As occurred here, the exercise of the statutory right not to disclose the information would be used against the physician as evidence the physician is hiding something. Allowing this to occur does not serve the policy goals of promoting candor and open discussion among participants in the peer review process.
Id. at 649, 602 S.E.2d at 765.
Deal and Pocock have answered questions about the outcome of committee actions, namely how many physicians have been suspended while each one was serving as a committee member. They have refused to answer questions relating to what led to the suspension of those physicians. The Peer Review Statute is salutary and salubrious. All committee actions are safeguarded and protected by the Peer Review Statute. The reasons considered by a committee to summarily suspend a physician are confidential just like the documents and testimony reviewed when a physician applies for clinical privileges or appeals a suspension of clinical privileges.

CONCLUSION
The Peer Review Statute serves the important public policy goal of ensuring quality medical care to citizens of South Carolina by protecting confidences revealed to committees evaluating the qualifications of physicians practicing in hospitals. The necessitude and essentiality for this information to *174 remain private is so momentous, portentous, and consequential that appellate courts of this state will address orders jeopardizing this confidentiality despite their interlocutory nature.
We hold the efficaciousness and applicability of the South Carolina Peer Review Statute mandates the revelation by physicians of the outcome of committee actions. We rule that any further questions delving into the committee's proceedings are absolutely protected and safeguarded by the statutory provisions encapsulated in the Peer Review Statute.
Accordingly, the order of the circuit court is
REVERSED.
SHORT and THOMAS, JJ., concur.
NOTES
[1] The parties briefed the refusal of Dr. Stephen Shapiro (Shapiro) to answer the same questions at his deposition, which was conducted after the circuit court issued its order regarding Deal and Pocock. Because there is no order from the circuit court regarding Shapiro's deposition, the matter is not properly before this Court.