669 S.E.2d 619

**April D. ENOS, Appellant,**

**v.**

**John DOE and Travelers Indemnity Insurance Co., Defendants,**

**of whom: John Doe is the, Respondent.**

**No. 4444.**

Court of Appeals of South Carolina.

Heard Oct. 8, 2008.

Decided Oct. 14, 2008.

Rehearing Denied Dec. 19, 2008.

298

Mitchell J. Williams, of Columbia, for Appellant.

William P. Davis, of Columbia, for Respondent.

ANDERSON, J.:

April D. Enos appeals the trial court granting a directed verdict in favor of defendant John Doe in an action arising out of a motor vehicle accident where the driver is unknown. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

April Enos (Enos) and her boyfriend left her home between 3:00 and 4:00 p.m. on Friday, September 13, 2002, "to go out drinking." They rode in her 1996 Jeep Grand Cherokee, but she does not recall who drove. The couple went to the Crow Bar in Rock Hill. Enos does not remember how long they were there, but later in the afternoon they drove to the Handle Bar about ten or fifteen minutes away. Enos verified she and her boyfriend got into an argument, and her boyfriend left. Enos returned to the bar and continued to drink to the point of "getting intoxicated."

Enos maintains she eventually went to her vehicle to go to sleep. She remembers getting into the Jeep's passenger seat, reclining the seat, and dropping her keys in the cup holder. The next thing she recollects is waking up in the hospital. Enos does not know who was driving her Jeep at the time of the collision nor anything about how the wreck occurred. She is not aware of any witness who observed the accident or who was driving. She testified that she was familiar with the location of the accident. She described the curve as "a very sharp curve" and "a fifteen mile an hour curve."

Daniel Leeman, a volunteer firefighter who responded to the accident, asserted that the Jeep appeared to have hit a bridge abutment located between two curves in the roadway. He declared there is a sharp left curve before the bridge when traveling south from Rock Hill, which was seemingly the vehicle's direction of travel. Leeman found Enos on the passenger side. He saw a hole in the passenger side of the windshield consistent with her hitting the windshield.

Jeffrey Scott Burch, a paramedic with Chester County EMS, arrived at the scene and discovered Enos sitting on the passenger side of the vehicle complaining of right shoulder pain. He verified most of the damage was to the right front side of the vehicle and "the windshield was bulged out where her head hit." She had noticeable wounds to the right side of her neck, right ear, and a busted mouth and nose.

Enos brought an action against John Doe pursuant to her uninsured motorist coverage and sections 38–77–150 and 38–77–170 of the South Carolina Code, alleging that an unknown driver had driven her car into a bridge abutment while she was a passenger. Enos's insurance carrier, Travelers Indemnity Company (Travelers), answered in the name of John Doe denying the allegations and alleging comparative negligence. Travelers amended its answer to include several defenses, one of which was that Enos was without standing to prosecute the action because she failed to produce an affidavit from a witness, other than the owner or operator of the vehicle, attesting to the truth of the facts of the accident as required by section 38–77–170(2).

Travelers moved for summary judgment on the bases that (1) strict compliance with the statutes allowing an insured to

recover UM benefits where damages are caused by an un-known driver is mandated; (2) S.C.Code section 38–77–150 requires the insured be "legally entitled to recover" from the owner or operator of an insured vehicle, but Enos admitted she had no information or evidence as to what actions, if any, of the alleged driver contributed to the collision and that she had not alleged any other vehicle was involved; (3) S.C.Code section 38–77–170 dictates, under the circumstances present-ed, the insured may not recover UM benefits unless a witness, other than the owner or operator of the insured vehicle, signs an affidavit attesting to the truth of the facts of the accident; (4) Enos confirmed she had no information or evidence that the collision in question was witnessed by anyone other than the vehicle's driver; and (5) Enos conceded she had no affidavit from any witnesses.

At the close of Enos's case, the court granted Travelers' motion for directed verdict on the grounds: (1) Enos had not complied with section 38–77–170(2) and (2) Enos failed to present evidence that the defendant proximately caused her injuries.

## ISSUES

1.  Did the trial court err in ruling that Enos was required to comply with the affidavit requirement of section 38–77–170(2) by submitting an affidavit from a witness, other than the vehicle's owner or operator, attesting to the facts of the accident?

2.  Did the trial court err in directing a verdict on the additional ground that Enos failed to prove that her injuries were proximately caused by any negligence or recklessness on the part of the unknown driver of her vehicle?

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a directed verdict, this Court will reverse if no evidence supports the trial court's decision or the ruling is controlled by an error of law. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006); *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006). The appellate court must

determine whether a verdict for the party opposing the motion would be reasonably possible under the facts as liberally construed in his or her favor. *Pye v. Estate of Fox,* 369 S.C. 555, 564, 633 S.E.2d 505, 509 (2006); *Erickson v. Jones St. Publishers, L.L.C.,* 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006). If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Proctor v. Dep't of Health & Envtl. Control,* 368 S.C. 279, 292, 628 S.E.2d 496, 503 (Ct.App.2006). A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability. *Huffines Co. v. Lockhart,* 365 S.C. 178, 187, 617 S.E.2d 125, 129 (Ct.App.2005). When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Wright v. Craft,* 372 S.C. 1, 19, 640 S.E.2d 486, 496 (Ct.App.2006) (citing *Erickson,* 368 S.C. at 463, 629 S.E.2d at 663).

## *LAW/ANALYSIS*

Section 38–77–170 of the South Carolina Code, entitled "Conditions to sue or recover under uninsured motorist provision when owner or operator of motor vehicle causing injury or damage is unknown" and known as the John Doe statute, states:

If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:

(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;

(2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;

(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

The following statement must be prominently displayed on the face of the affidavit provided in subitem (2) above: A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.

S.C.Code Ann. § 38–77–170 (2002).

## I.  Statutory Interpretation

■ The issue of interpretation of a statute is a question of law for the court. *Univ. of S. Cal. v. Moran*, 365 S.C. 270, 275, 617 S.E.2d 135, 137 (Ct.App.2005); *see also Catawba Indian Tribe v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007), *cert. denied*, Oct. 1, 2007; *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995).

■ The cardinal rule of statutory interpretation is to determine the intent of the legislature. *Bass v. Isochem*, 365 S.C. 454, 459, 617 S.E.2d 369, 377 (Ct.App.2005); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003); *Smith v. S.C. Ins. Co.*, 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002); *see also Gordon v. Phillips Utils., Inc.*, 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County*, 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998); *State v. Morgan*, 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App.2002); *State v. Hudson*, 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *S.C. Farm Bureau Mut. Ins.*

*Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App. 1989).

▬ The legislature's intent should be ascertained primarily from the plain language of the statute. *State v. Landis,* 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct.App.2004); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Mun. Ass'n of S.C. v. AT & T Commc'ns of S. States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Hudson,* 336 S.C. at 246, 519 S.E.2d at 582.

▬ When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. *Miller v. Aiken,* 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005); *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994). If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.,* 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003); *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *see also City of Camden v. Brassell,* 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Bayle v. S.C. Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Cos. Fin. Corp.,* 331 S.C. 600, 604, 503 S.E.2d 465, 468 (1998); *Adkins v. Comcar Indus., Inc.,* 323 S.C. 409, 411, 475 S.E.2d 762, 763 (1996); *Worsley Cos. v. S.C. Dep't of Health & Envtl. Control,* 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. S.C. Tricentennial Comm'n,* 254 S.C. 378, 402,

175 S.E.2d 805, 817 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); *Bayle*, 344 S.C. at 122, 542 S.E.2d at 739.

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan*, 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582; *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One 1992 Blue Mazda Truck*, 330 S.C. 371, 376, 498 S.E.2d 894, 896 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins*, 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002); *Adams v. Texfi Indus.*, 320 S.C. 213, 217, 464 S.E.2d 109, 112 (1995); *Brassell*, 326 S.C. at 560, 486 S.E.2d at 494.

A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *Wieters v. Bon–Secours– St. Francis Xavier Hosp., Inc.*, 378 S.C. 160, 170, 662 S.E.2d 430, 436 (Ct.App.2008); *see also Georgia–Carolina Bail Bonds*, 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). The real purpose and intent of the lawmakers will prevail over the literal import of the words. *Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992).

Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *N.Y. Times Co. v. Spartanburg County Sch. Dist. No. 7*, 374 S.C. 307, 312, 649 S.E.2d 28, 30 (2007);

*Kiriakides v. United Artists Commc'ns, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994); *Grinnell Corp. v. Wood,* 378 S.C. 458, 469, 663 S.E.2d 61, 67 (Ct.App.2008). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *Houston v. Deloach & Deloach,* 378 S.C. 543, 551, 663 S.E.2d 85, 89 (Ct.App.2008); *see also Mid–State Auto Auction v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996) (stating that in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole).

## II. A Retrospection of the John Doe Statute

The South Carolina Supreme Court undertook a historical review of the John Doe statute in *Collins v. Doe,* 352 S.C. 462, 574 S.E.2d 739 (2002). The court annunciated:

Our General Assembly first enacted a John Doe statute in 1963. The statute as first enacted required "physical contact with the unknown vehicle" before the plaintiff could recover. *See* Act No. 312, 1963 S.C. Acts 535.

In 1987, the General Assembly relaxed the physical contact requirement, and amended the John Doe statute to provide that a plaintiff has no right of action or recovery unless "the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle." Act No. 166, 1987 S.C. Acts 1122. Under the 1987 amendment, a witness-sworn affidavit was not required.

The legislature again amended the statute in 1989, and added the sworn affidavit requirement. The statute at large effecting this most recent amendment provides that the act is "to amend section 38–77–170 relating to the requirements to recover under the uninsured motorist provisions when the at-fault party is unknown, so as to require a witness to the accident to sign an affidavit attesting to the truth of the facts about the accident and to provide a warning statement to be displayed on the affidavit." Act No. 148, 1989 S.C. Acts 439 (emphasis supplied).

As written, section 38–77–170 contains requirements necessary to support a plaintiff's "right of action." Black's defines "right of action" as:

1. The right to bring a specific case to court. 2. A right that can be enforced by legal action; a chose in action. *Cf.* cause of action.

*Black's Law Dictionary* 1324 (Bryan A. Garner ed., 7th ed, West 1999). Without a sworn affidavit, a plaintiff has no right of action. In other words, without the affidavit, she has no right to bring her case to court.

*Collins,* 352 S.C. at 466–67, 574 S.E.2d at 741.

In *Unisun Insurance Co. v. Schmidt,* 339 S.C. 362, 529 S.E.2d 280 (2000), the court addressed what qualifies as an uninsured motor vehicle. January O'Neale's father gave her a BMW with strict instructions not to let anyone else drive the car. Miss O'Neale and her friend Jennifer Hurst attended a party at Christopher Schmidt's house. During the party, Schmidt and Hurst got into the BMW. Schmidt later drove off in the car with Hurst asleep in the backseat. Schmidt lost control of the car and hit a tree, injuring Hurst. Hurst had the consent of the owner of the BMW and of the permissive user daughter to occupy the vehicle to, from, and while attending the party. Schmidt's driving of the automobile was not consensual, but Hurst's use of the vehicle was at all times consensual.

State Farm, the carrier for the BMW, successfully denied liability coverage due to the non-permissive use by Schmidt. Hurst then claimed the denial of liability coverage by State Farm rendered the BMW an uninsured motor vehicle. Hurst argued because she was a permissive occupant and/or guest and/or user of the car at the time of the accident, she was covered under State Farm's uninsured motorist policy and the uninsured motor vehicle insurance statutes. *See* S.C.Code Ann. § 38–77–150 (2002).

The trial court agreed and found Hurst was an insured under the uninsured motorist coverage of the State Farm policy in effect at the time on the O'Neale BMW, and the car was an uninsured motor vehicle. Jennifer Hurst could therefore make an uninsured motorist claim against the State Farm

policy insuring the O'Neale BMW. We reversed, and the Supreme Court granted certiorari. The court edified:

> First, the Court of Appeals erred in concluding the O'Neale vehicle was not a vehicle "to which the policy applied." The Court of Appeals followed the factually analogous case of *Nationwide Mutual Insurance Co. v. Harleysville,* 203 Va. 600, 125 S.E.2d 840 (1962), in interpreting the clause "to which the policy applies" to deny coverage. However, this Court has not interpreted the clause in such a restrictive manner. The "motor vehicle to which the policy applies" is "the motor vehicle designated in the policy." The words "to which the policy applies" are words of identification, and not words of exclusion as used by the Court of Appeals.

> Second, we disagree with the Court of Appeals' conclusion the O'Neale vehicle was not being "used with the consent of the insured." The Court of Appeals incorrectly focused on Schmidt's operation of the vehicle, rather than the "use" of the vehicle by Hurst, which Respondent stipulated "was at all times consensual."

*Schmidt,* 339 S.C. at 366–67, 529 S.E.2d at 282 (citations omitted).

On the second issue, as to whether the O'Neale vehicle was an uninsured motor vehicle, the court expounded:

> The purpose of the uninsured motorist law is "to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle." In the instant case, a permissive user (Hurst) was injured by an uninsured motorist (Schmidt). When State Farm successfully denied liability, the O'Neale vehicle became an uninsured motor vehicle.

> The uninsured motorist statute does not appear to contemplate single-car accidents. We do not believe, however, the legislature intended an otherwise insured passenger to lose coverage when an unauthorized driver takes the wheel. The construction of the statute urged by respondent would relieve the carrier of responsibility when a named insured is the victim of a carjacking. We will reject a statutory interpretation when to accept it would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention.

Our interpretation of § 38–77–30(13) comports with the plain language of the statute and advances its policies. *Id.* at 368, 529 S.E.2d at 283 (citations omitted).

In *Collins v. Doe,* Collins took evasive action to avoid colliding with an unknown driver who failed to yield the right of way at an intersection. 352 S.C. at 464–465, 574 S.E.2d at 740. In doing so, she hit another vehicle. Collins failed to present a signed affidavit, but she did produce a witness who testified at trial that a vehicle driven by Doe caused the accident. *Id.* The trial court found that Collins's failure to supply an affidavit was fatal to her cause of action. *Id.* The Supreme Court articulated:

> In this case, the Court of Appeals held that the purpose of the sworn affidavit requirement is served where a witness testifies at trial. We disagree. We discern three purposes for the sworn affidavit requirement. The obvious purpose, fraud prevention, is seemingly served by the Court of Appeals' conclusion. By offering sworn trial testimony, the witness subjects herself to the criminal penalties for perjury. However, the statute reflects that the legislature's chosen vehicle for fraud prevention under these circumstances is a sworn affidavit prominently displaying the prescribed disclaimer. The disclaimer alerts the affiant that she may be subject to criminal penalties for providing untrue information. The affidavit also allows the defendant, at trial, to cross examine the witness regarding the statement. The Court of Appeals' holding forecloses the defendant's ability to conduct cross examination regarding the witness's statement in the affidavit.
>
> In addition, the affidavit constitutes tangible evidence that the insured has a good faith basis for making the claim. Finally, the sworn affidavit requirement fulfills a notice function: Providing, upon request, the defendant-insurer with information relating to the validity of the plaintiff's case. Without the affidavit, and without the opportunity to interview the witness, the insurer is deprived of valuable factual information with which to assess and evaluate the claim.

*Id.* at 469–70, 574 S.E.2d at 743 (footnote omitted).

The Supreme Court examined the statutory requirement of section 38–77–170(2) in *Gilliland v. Doe,* 357 S.C. 197, 592

S.E.2d 626 (2004). Gilliland advanced that two young men waved at her from a pick-up truck as she was leaving a grocery store at night. The men began to follow her and " 'rode her bumper' for a two-mile stretch." *Id.* at 198, 592 S.E.2d at 627. Gilliland sped up in an attempt to get away from the truck, but she lost control of her car, ran off the road, and hit a tree. She testified that the truck never made contact with her car and that the boys backed off when she began to lose control. *Id.* Gayle Norris was stopped at a nearby intersection when she saw the lights of two vehicles come around the curve. After Gilliland's accident, Norris observed the lights of an automobile behind Gilliland " 'arc through a field' as if it were making a U-turn." *Id.* at 199, 592 S.E.2d at 627.

The jury returned a verdict for Gilliland, and the trial court denied Doe's motion for JNOV. This Court reversed and granted the JNOV. The Supreme Court considered whether Norris's testimony met the "independent witness" requirement of section 38–77–170:

> We find the record includes sufficient evidence that an unknown vehicle was involved in Petitioner's accident.
>
> In *Marks v. Indus. Life & Health Ins. Co.*, 212 S.C. 502, 505, 48 S.E.2d 445, 446, this Court held that "[t]he attending circumstances along with direct testimony may be taken into account by the jury in arriving at its decision as any fact in issue may be established by circumstantial evidence, if the circumstances, which must themselves be proven lead to the conclusion with reasonable certainty."
>
> We now hold that the testimony of Gayle Norris contained circumstantial evidence that supports Petitioner's testimony that an unknown driver contributed to her accident. Norris's testimony that she saw the lights of an unknown car that was turning around and fleeing the scene of the accident sufficiently corroborates Petitioner's testimony creating a question of fact as to causation for the jury.

Id. at 202, 592 S.E.2d at 628–29.

In *Shealy v. Doe*, 370 S.C. 194, 634 S.E.2d 45 (Ct.App.2006), *cert denied*, Aug. 9, 2007, we discussed the witness affidavit requirement. Eddie Bolin was driving a pickup truck owned by Dale Leaphart. Jason Shealy and Ronald Cromer sat in

the bed of the truck. Bolin swerved abruptly, throwing Shealy and Cromer from the truck. Bolin later explained to Shealy and the police that he swerved to avoid hitting an unknown vehicle. Shealy filed a complaint against the unknown driver to recover against Leaphart's UM carrier for his injuries.

The affidavit he attached to his complaint stated:

Personally appeared before me, Jason Shealy, who being duly sworn deposes and says as follows:

That he is Jason Shealy and that on or about June 7, 2003, he was a passenger in a pickup truck being driven by Eddie Bolin and, upon information and belief, owned by Dale Leaphart. That the pickup truck was being driven on Highway 391 near Batesburg–Leesville, South Carolina. That Eddie Bolin sharply, unexpectedly and suddenly swerved the truck near the entrance to Leaphart Acres, throwing the affiant and another passenger from the bed of the truck onto the roadway. That the day following the incident the affiant was told by Eddie Bolin that an unknown vehicle and driver had come onto the roadway in the path of the truck causing Eddie Bolin to sharply and unexpectedly maneuver the truck he was driving to avoid a collision.

A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.

*Id.* at 197, 634 S.E.2d at 46–47.

Additionally, Shealy submitted the affidavit of Ronald Cromer, which contained identical language to Shealy's affidavit. The trial court granted Doe's motion to dismiss, recognizing that evidence presented during the hearing converted the motion into one for summary judgment. The court held Shealy failed to comply with the witness affidavit requirement of section 38–77–170(2). We explained:

Section 38–77–170(2) is clear on its face. It expressly requires that someone other than the owner or operator of the insured vehicle witness the accident. As stated in *Wausau Underwriters Insurance Company v. Howser*, 309 S.C. 269, 275, 422 S.E.2d 106, 110 (1992), "no physical

contact with the unknown vehicle is necessary when a witness other than the owner or driver of the insured vehicle is able to **attest to the facts of the accident.**" (Emphasis added.) *See also Collins v. Doe,* 352 S.C. 462, 470, 574 S.E.2d 739, 744 (2002) ("The plain language of § 38–77–170 requires that where the accident involves no physical contact between the insured's vehicle and the unidentified vehicle, the accident 'must have been witnessed by someone other than the owner or operator of the insured vehicle' and the 'witness must sign an affidavit attesting to the truth of the facts of the accident contained therein.' "). Shealy asserts section 38–77–170(2) does not require the witness affidavit to be based on personal knowledge. This argument directly contravenes the language of the statute. Shealy submitted affidavits of two people who apparently did not witness the accident; their affidavits do not attest to facts they perceived, but merely restate the perceptions of the vehicle's operator. Thus, Shealy produced no evidence that someone other than Bolin, the operator of the insured vehicle, witnessed the accident. Shealy's and Cromer's affidavits do not comply with this express directive.

. . .

According to Shealy, requiring the affiant to have witnessed the accident creates an unreasonably harsh result because a sleeping passenger or blind passenger injured by a John Doe driver might be precluded from recovery. Yet the statute indubitably bars an operator and lone occupant of a vehicle from recovery where no contact is made with the unknown driver and where no one else witnesses the accident. In both instances, the result is lamentable to the injured party, but mandated by the statute. Section 38–77–170 demonstrates a policy decision by the legislature which balances the interest of parties injured in accidents with unknown drivers, with the interest of insurance companies in preventing fraudulent claims. Where the legislature determines policy and promulgates a clear rule of law, there is no room for the courts to alter that decision.

*Id.* at 200–01, 634 S.E.2d at 48–49.

### III.  Application to the Case *Sub Judice*

▮▮▮  Enos admits she cannot comply with the affidavit requirement of section 38–77–170(2). The only witnesses to

the accident were Enos, the vehicle's owner, and presumably, the unknown operator of the vehicle. We discussed the hypothetical consequence to a sleeping or blind passenger in *Shealy v. Doe.* 370 S.C. at 201, 634 S.E.2d at 49. We described the resulting bar to recovery as "lamentable to the injured party, but mandated by the statute." *Id.* The same outcome applies to an intoxicated passenger with no recollection, which embraces Enos on the morning of and night prior to the accident.

Even if Enos were not intoxicated and could remember who was driving at the time of the accident, the legislature has clearly dictated that recovery from an uninsured motorist carrier is only allowed when certain conditions are met. S.C.Code Ann. § 38–77–170 (2002) ("If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, **there is no right of action or recovery under the uninsured motorist provision, unless:** . . .") (emphasis added). Because there was no physical contact with another vehicle, Enos must present an affidavit from "someone other than the owner or operator of the insured vehicle" in order to bring an action or recover. S.C.Code Ann. § 38–77–170(2) (2002). The General Assembly has unequivocally spoken on the prerequisites to bringing an action against an uninsured motorist carrier, and Enos has failed to meet the *sine qua non* prescribed by the legislature.

Enos's argument that the legislature did not intend to require affidavits in single-vehicle accidents is unavailing. Enos is correct in her assertion that "[t]he uninsured motorist statute 'is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished.'" *Schmidt,* 339 S.C. at 366, 529 S.E.2d at 282 (quoting *Gunnels v. Am. Liberty Ins. Co.,* 251 S.C. 242, 247, 161 S.E.2d 822, 824 (1968)). Section 38–77–170(2) requires an affidavit when there is no physical contact with an unknown vehicle, but it is not restricted to a collision caused by an unknown vehicle. The affidavit requirement applies equally to a single-car accident as an accident caused by an unknown vehicle. "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Thompson ex rel. Harvey v.*

*Cisson Constr. Co.*, 377 S.C. 137, 157, 659 S.E.2d 171, 181 (Ct.App.2008).

We do not reach Enos's second issue regarding evidence of Doe's negligence because her action is barred for her failure to comply with section 38–77–170(2).

## CONCLUSION

Our courts have historically required strict compliance with section 38–77–170. *Collins*, 352 S.C. at 470, 574 S.E.2d at 743. The statute is clear and unambiguous. Enos may not maintain an action against an unknown driver where there is no witness to the accident other than the vehicle's owner or operator.

Accordingly, the judgment of the circuit court is

**AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.