691 S.E.2d 170

**Tracy A. BURNETT, as Personal Representative of the Estate of Douglas W. Burnett, Deceased, and Tracy A. Burnett, individually, Appellants,**

v.

**FAMILY KINGDOM, INC., d/b/a Family Kingdom Amusement Park, Respondent.**

No. 4656.

Court of Appeals of South Carolina.

Heard Nov. 11, 2009.

Decided March 11, 2010.

184

James Stevens, Jr., of Loris, for Appellants.

William Edward Lawson, of Myrtle Beach, for Respondent.

SHORT, J.

Tracy Burnett (Wife) appeals the trial court's decision granting Family Kingdom, Inc.'s (the Amusement Park) motion for a directed verdict in her negligence action. We reverse.

## FACTS

Wife; her husband, Douglas Burnett (Husband); Wife's brother, Clyde Adams; and Adams' friend, Patricia Smith, were vacationing in Myrtle Beach, South Carolina. While there, the party visited the Amusement Park, which operates a go-cart attraction. After purchasing two tickets, Husband and Adams proceeded to get in line to ride the go-carts. Wife testified that while Husband and Adams were waiting in line, three young men came behind them and began acting boisterously. According to Wife, the three young men stated they were going to bump or collide with the go-carts during the upcoming ride. Upon hearing this, Husband warned the young men not to collide with him.

The ride operators put Husband, Adams, and the three young men in the go-carts after they took the tickets from the riders. The operators belted in and gave instructions to the drivers. They were warned not to bump or collide with the other go-carts and not to drive recklessly.

The go-cart ride had a controller box that contained a device with which the ride operators could deactivate the ride. When pressed, the "All Stop" button would stop all of the go-carts. The Amusement Park's manager, Donald Sipes, testified that after the second warning not to bump, the ride operators were required to push the "All Stop" button and stop the ride. Sipes also stated a collision that resulted in a go-cart being turned around required the ride operators to stop the ride.

Before Adams' go-cart reached the first turn of the first lap, one of the three young men hit his go-cart and caused Adams' go-cart to spin around 180 degrees. Subsequent to this

collision, for the next few laps the three young men continued to repeatedly bump or collide with Husband and Adams. Wife, Husband, Adams, and Smith repeatedly asked the ride operators for assistance because the three young men were driving in a reckless and dangerous manner. Wife testified that rather than providing help to Adams and Husband, the ride operators encouraged the three young men and cheered them on.

After the second lap, Husband drove his cart off of the track and into the pit area, where his cart was hit from behind by one of the young men's cart. The collision caused the go-cart, with Husband inside, to be lifted off the ground. Shortly thereafter, another young man collided with Husband's go-cart. Only after these collisions did the ride operators press the "All Stop" button to deactivate all the go-carts.

Husband brought a negligence action against the Amusement Park. At the close of Wife's case,[1] the Amusement Park moved for a directed verdict, arguing Wife had failed to prove the Amusement Park acted negligently. The trial court granted the motion. This appeal followed.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a directed verdict motion, this court will reverse if no evidence supports the trial court's decision or the ruling is controlled by an error of law. *Enos v. Doe,* 380 S.C. 295, 300, 669 S.E.2d 619, 621 (Ct.App.2008). When reviewing the trial court's decision on a motion for directed verdict, this court must employ the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Welch v. Epstein,* 342 S.C. 279, 299–300, 536 S.E.2d 408, 418–19 (Ct.App.2000). The trial court must deny a directed verdict motion when the evidence yields more than one inference or its inference is in doubt. *Id.* When considering a directed verdict motion, neither the trial court nor the

---

1. Husband died during the action, and Wife was appointed as Husband's personal representative to represent his estate. Wife does not allege Husband died as a result of the injuries he sustained during the go-cart ride.

appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Id.*

## LAW/ANALYSIS

Wife argues the trial court improperly granted the Amusement Park's motion for a directed verdict in her negligence action. Specifically, Wife contends the trial court erred by holding she failed to show the Amusement Park owed a duty of due care. We agree.

■■ In order to succeed in a negligence cause of action, the plaintiff must establish (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. *Moore v. Weinberg,* 373 S.C. 209, 220–21, 644 S.E.2d 740, 746 (Ct.App.2007). A crucial element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Absent a duty, there is no actionable negligence. *Id.*

■ The question of negligence is a mixed question of law and fact. *Id.* First, the court must resolve, as a matter of law, whether the law recognizes a particular duty. *Id.* If the court determines there is no duty, the defendant is entitled to a judgment as a matter of law. *Id.* However, if a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred. *Id.* Thus, we must first determine if the Amusement Park owed a duty to Husband.

■ At common law, a person ordinarily has no duty to protect another from a harm inflicted by a third party. *Burns v. S.C. Comm'n for the Blind,* 323 S.C. 77, 79, 448 S.E.2d 589, 590–91 (Ct.App.1994). Usually, a person incurs no liability for failure to take steps to benefit others or protect them from harm not created by his or her own wrongful conduct. *Id.* However, an affirmative legal duty can be created by a statute, among other things, and thus, the statute can be a source of a duty owed in a negligence case. *Id.*

■ The existence of such a statutorily imposed duty is determined by applying a two-prong test. *Id.* Both of the

following elements must be satisfied to find a statute imposes a duty sufficient to support a cause of action in negligence. *Id.* First, it must be established that the essential purpose of the statute is to protect the plaintiff from the kind of harm suffered. *Id.* Second, the plaintiff must be a constituent of the class of persons the statute seeks to protect. *Id.*

As to the first element, the South Carolina Amusement Rides Safety Code (the Act) was passed to prevent injuries to visitors and employees at amusement parks and fairs. S.C.Code Ann. §§ 41–18–20 et seq. (Supp. 2008); *see Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 391, 520 S.E.2d 142, 151 (1999) ("The Act's purpose is to prevent injuries to visitors and employees at amusement parks and fairs."). Section 41–18–20(A) of the South Carolina Code (Supp.2008), entitled "Legislative intent," states, "The purpose of this chapter is to guard against personal injuries in the ... use of amusement devices at ... amusement parks to persons employed at or attending ... amusement parks...." [2] Subsection (B) of this section states, "It is the intent of this chapter that amusement devices must be ... maintained, and operated so as to prevent injuries." § 41–18–20(B).

The first element is satisfied because the purpose of the Act is to prevent personal injuries that result from the use of amusement devices. In the present case, Husband was visiting the Amusement Park and suffered the type of personal injury the Act seeks to avoid as a result of the use of the go-cart ride.

As to the second element, that the plaintiff must be a constituent of the class of persons the statute seeks to protect, section 41–18–20 states the purpose of the Act is to guard against personal injuries to persons attending amusement parks. This section also states, "[t]he purpose of this chapter is to ... ensure to the injured party the possibility of financial

---

2. An "amusement device" is defined as "any mechanical device ... which carries or conveys passengers on, along, around, over, or through a fixed or restricted course or within a defined area for the purpose of giving its passengers amusement, pleasure, or excitement." S.C.Code Ann. § 41–18–40(1) (Supp.2008). A go-cart qualifies as an amusement device. An "amusement park" is defined as "a tract or area used principally as a permanent location for amusement devices or structures." § 41–18–40(2).

recovery as against the owner of the carnival, fair, or amusement park where the injury occurred." *Id.* Husband qualifies because he was attending the Amusement Park at the time of the injury. Additionally, the statute allows Husband as an injured party to seek financial retribution against the owner of the Amusement Park.

Wife meets both elements for establishing a statutorily imposed duty. Thus, the Act creates an affirmative legal duty on part of the Amusement Park, and the trial court erred in concluding Wife failed to show a duty existed.

The Amusement Park argues there are three additional grounds on which to affirm the trial court. The Amusement Park contends (1) the trial court found that even if there was a duty, it did not breach this duty; (2) there was no proximate cause; and (3) Husband's negligence outweighed any negligence on its part. We disagree.

As to the first contention, as explained above, the question of negligence is a mixed question of law and fact. *Moore,* 373 S.C. at 221, 644 S.E.2d at 746. If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred. *Id.* Thus, the Amusement Park's argument that it did not breach a duty fails because that determination rests with the jury.

Amusement Park's argument that it did not proximately cause Husband's injuries also fails. Only on the rarest occasion should the trial court determine the issue of proximate cause as a matter of law. *Bailey v. Segars,* 346 S.C. 359, 367, 550 S.E.2d 910, 914 (Ct.App.2001) ("Ordinarily, the question of proximate cause is one of fact for the jury. The trial court's sole function regarding the issue is to determine whether particular conclusions are the only reasonable inferences that can be drawn from the evidence. Only in rare or exceptional cases may the issue of proximate cause be decided as a matter of law.").

Proximate cause requires proof of causation in fact and legal cause. *Hurd v. Williamsburg County,* 363 S.C. 421, 428, 611 S.E.2d 488, 492 (2005). Causation in fact is demonstrated by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Id.* Legal cause is shown by establishing foreseeability. *Id.* An injury is

considered foreseeable if it is the natural and probable consequence of a breach of duty. *Id.*

In the present case, viewing the evidence and all reasonable inferences in the light most favorable to Wife, we conclude the trial court erred in not submitting the proximate cause issue to the jury. A jury could reasonably conclude Husband's injuries would not have occurred but for the ride operators' failure to stop the go-carts after Wife, Husband, Adams, and Smith repeatedly asked the ride operators for assistance because the three young men were driving in a reckless and dangerous manner. If the ride operators had stopped the ride by pushing the "All Stop" button, Husband would not have been injured when Husband drove his cart off of the track and into the pit area. While Husband was in the pit area, he was rear ended by one of the young men with such force that the collision caused the go-cart with the Husband inside to be lifted off the ground. Thereafter, another young man collided into Husband's go-cart.

With respect to foreseeability, a jury could conclude Husband's injuries were the natural and probable consequence of the breach of the duty by the Amusement Park. The evidence presented showed: (1) the ride operators ignored repeated requests for assistance by Wife, Husband, Adams, and Smith when the three young men were hitting and colliding with Husband and Adams; (2) as a natural and probable consequence of the ride operators' failure to stop the ride, the three young men continued to drive their go-carts in a reckless and dangerous manner by repeatedly hitting and colliding with Husband; and (3) Husband suffered injuries. Accordingly, Wife did present sufficient evidence of proximate cause to survive the directed verdict motion.

As to the comparative negligence argument, the Amusement Park argues Husband's two prior back surgeries and a knee surgery constituted comparative negligence because he went on the go-cart ride knowing the three young men would collide with his go-cart.[3]

---

3. Wife testified that when the three young men stated they were going to bump or collide with other go-carts, Husband responded "don't be hitting me, I've had back surgery."

In South Carolina, a plaintiff may only recover damages if his or her own negligence is not greater than that of the defendant. *Id.* at 429, 611 S.E.2d at 492. The determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least when conflicting inferences may be drawn from the evidence. *Id.* In a comparative negligence case, the trial court should grant a motion for directed verdict if the only reasonable inference from the evidence is that the non-moving party's negligence exceeded fifty percent. *Id.*

In regards to Husband's prior surgeries, a defendant takes the plaintiff as he or she is found, and the plaintiff is entitled to recover damages resulting from the aggravation of a pre-existing condition. *Waring v. Johnson,* 341 S.C. 248, 260, 533 S.E.2d 906, 913 (Ct.App.2000). As to Husband's knowledge that the three young men would collide with his go-cart, neither the trial court nor this court is in a position to determine whether Husband's knowledge outweighed the fact that the ride operators failed to stop the ride after repeated requests for assistance by Wife, Husband, Adams, and Smith.

The Amusement Park also argues Husband's negligence is outweighed by its negligence because Husband disregarded a safety sign. The sign reads, in pertinent part, "PARTICIPATE AT YOUR OWN RISK. THIS RIDE IS NOT RECOMMENDED FOR INDIVIDUALS WHO ARE PREGNANT OR HAVE HEART, NECK, OR BACK PROBLEMS." The Amusement Park presented no evidence Husband saw this sign. Adams testified he did not see the sign prior to entering the go-cart ride. Additionally, the sign states the go-cart ride is not recommended for individuals with back problems and does not state the ride is prohibited to persons with back issues. Even assuming Husband saw the sign, neither this court nor the trial court is in a position to determine whether this outweighed the ride operators' failure to stop the ride after repeated requests for assistance.[4]

4. The comparative negligence and proximate cause portions of this opinion are not to be construed to conclude that Wife has conclusively proved proximate cause or disproved comparative negligence. These are issues to be determined by the trier of fact. Our review of the trial

194

## CONCLUSION

Accordingly, the trial court's decision is

**REVERSED.**

THOMAS and KONDUROS, JJ., concur.

court's decision on these issues is limited to whether the trial court erred in granting a directed verdict.